# NO. 22-1843

In The

# United States Court Of Appeals
## For The Fourth Circuit

## JOHN DOE,

*Plaintiff - Appellant,*

## v.

## THE CITADEL, The Military College of South Carolina; GLENN M. WALTERS, in his official capacity at The Citadel; VALERIE MERCADO, in her official capacity at The Citadel; JANET SHEALY, in her official capacity at The Citadel,

*Defendants - Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AT CHARLESTON

————————

## BRIEF OF APPELLANT

————————

**Philip A. Byler**
PHILIP A. BYLER, ESQ
**11 Broadview Drive**
**Huntington, NY 11743**
**(631) 848-5175**

*Counsel for Appellant*

*Gibson*Moore Appellate Services, LLC
206 East Cary Street ♦ P.O. Box 1460 (23218) ♦ Richmond, VA 23219
804-249-7770 ♦ www.gibsonmoore.net

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __221843__        Caption: __John Doe v. The Citadel The Military College of South Carolina, et al__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__John Doe, a pseudonym__
(name of party/amicus)

_____

 who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Philip A. Byler                     Date: August 25, 2022

Counsel for: Plaintiff-Appellant John Doe

- 2 -

Print to PDF for Filing

# <u>TABLE OF CONTENTS</u>

**Page:**

TABLE OF AUTHORITIES ...................................................................v

PRELIMINARY STATEMENT ..........................................................1

STATEMENT OF JURISDICTION.......................................................3

STATEMENT OF ISSUES PRESENTED FOR REVIEW .....................4

STATEMENT OF THE CASE...............................................................4

     A.     The Parties..............................................................5

     B.     Jane Roe's Accusations and John Doe's Denials................5

     C.     The Commandant's Board Hearing ......................................6

     D.     The Commandant's Board Ruling ........................................8

     E.     John Doe's Appeal ...............................................................9

     F.     Ongoing Injury ...................................................................11

     G.     John Doe's Causes of Action ..............................................11

     H.     The District Court Order of Dismissal ...............................11

SUMMARY OF ARGUMENT ..............................................................13

ARGUMENT ........................................................................................14

     I.     THE STANDARD OF REVIEW........................................14

     II.     JOHN DOE HAS ALLEGED FACTS THAT ALLOW THE COURT TO DRAW THE REASONABLE INFERENCE THAT JOHN DOE WAS DENIED DUE PROCESS ...................................16

A.  The District Court's Due Process Assumptions and Errors In Analysis .................................................................17

B.  The District Court's Failure To Recognize The Implication For Due Process From The Fact That Sexual Misconduct Was Alleged .........................................................19

C.  The District Court's Failure To Recognize The Denial Of Due Process From The Lack Of Impartiality And Neutrality Of Commandant's Board, Not Cured By An Appeal Board's Erroneous Affirmance ...................................20

   1.  The Required Impartiality and Neutrality in Disciplinary Cases ..........................................................20

   2.  The Pleaded Lack of Impartiality and Neutrality ..........22

   3.  The Appeal Board Affirmance Did Not Cure The Commandant's Board's Bias .........................................24

D.  The District Court's Failure To Recognize The Denial Of Due Process From The Improper Denial Of Cross-Examination At The Commandant's Board Hearing................26

   1.  The Cross Question Was Not Harassment .....................28

   2.  Cross-Examination In Campus Tribunals .....................29

   3.  Motion To Dismiss Law ................................................30

E.  The District Court's Failure To Recognize The Denial Of Due Process From The Arbitrary And Capricious Decision That Was Rendered By The Commandant's Board And The Appeal Board ....................................................................31

   1.  *Vega* Satisfied .................................................................31

   2.  District Court Error.........................................................33

F.     The District Court's Reliance Upon What Procedures John Doe Did Receive As Overwhelming The Lack Of Impartiality And Neutrality, The Cutting Off Of Cross-Examination, And The Arbitrary And Capricious Decision-Making ..................................................................35

G.     The District Court's Confusion Of Affording Due Process And The Compliance With School Policies .............................36

III.    JOHN DOE HAS ALLEGED FACTS THAT ALLOW THE COURT TO DRAW THE REASONABLE INFERENCE THAT THE CITADEL DISCRIMINATED AGAINST JOHN DOE ON THE BASIS OF SEX ..........................................................................36

A.     Judge (Now Justice) Barrett's *Doe v. Purdue* Test for Sex Discrimination...........................................................................37

B.     The Relevance of the April 2011 Dear Colleague Letter .........39

C.     The Inference Of Sex Discrimination From A "Clearly Irregular Adjudicative Process" ..................................................41

      1.     The District Court's Treatment of *Doe v. Purdue* and John Doe's Actual Argument on "Clearly Irregular Adjudicative Process".......................................41

      2.     The District Court's Stated "Pitfalls" Of The Substantial Weight Of The Evidence Argument Are Not "Pitfalls" In This Case ..............................................44

D.     Sex Discrimination Is Shown By "Believe The Woman" Gender Bias...............................................................................46

      1.     The District Court's Reading of *Doe v. Coastal Carolina* Would Erroneously Justify Applying Title IX To Favor Females Contrary To Title IX's Text ........47

      2.     The Relevance Of Statistical Evidence ...........................49

[iii]

CONCLUSION ................................................................................52

REQUEST FOR ORAL ARGUMENT ..................................................53

CERTIFICATE OF COMPLIANCE ....................................................54

# TABLE OF AUTHORITIES

**Page(s):**

**Cases:**

*Alford v. United States*,
    282 U.S. 687 (1931)................................................................28

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................15

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................15

*Butler v. Rector & Bd. of Visitors of Coll. of William & Mary*,
    121 F. App'x 515 (4th Cir. 2005)................................ 27-28, 29, 30

*California v. Green*,
    399 U.S. 149 (1970)................................................................27

*Carey v. Piphus*,
    435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) ...................................21

*Cleveland Bd. of Educ. v. Loudermill*,
    470 U.S. 532 (1985)................................................................17, 19

*Cruz v. Maypa*,
    773 F.3d 138 (4th Cir. 2014) ................................................... 14-15

*Davis v. Baltimore City Cmty. Coll.*,
    2019 WL 5636362 (D.Md. Oct. 31, 2019).....................................22

*DePaola v. Clarke*,
    884 F.3d 481 (4th Cir. 2018) ......................................................14

*Doe 2 v. Fairfax County School Board*,
    384 F.Supp.3d 598 (D. Md. 2019)...............................................27

*Doe v. Alger*,
    175 F.Supp.3d 646 (W.D. Va. 2016)....................................... 29-30

*Doe v. American Univ.* ,
   2020 WL 5593909 (D.D.C. Sept. 18, 2020)....................................................40

*Doe v. Baum*,
   903 F.3d 575 (6th Cir. 2018) ....................................................29, 34, 38, 39

*Doe v. Coastal Carolina*,
   522 F.Supp.3d 173 (D.S.C. 2021) ............................................46, 47, 49, 50

*Doe v. Columbia Coll. Chi.*,
   933 F.3d 849 (7th Cir. 2019) ...............................................................44, 45

*Doe v. Columbia*,
   831 F.3d 42 (2d Cir. 2016) ...........................................................*passim*

*Doe v. Columbia*,
   836 F.3d 46 (2d Cir. 2016) .........................................................................37

*Doe v. Cummins*,
   662 Fed.Appx. 437 (6th Cir 2016) ...........................................................16

*Doe v. Maryland*,
   2021 WL 1174707 (D. Md. Mar. 29, 2021) .................................................34

*Doe v. Miami*,
   882 F.3d 579 (6th Cir. 2018) ...........................................................16, 20, 51

*Doe v. Oberlin*,
   963 F.3d 580 (6th Cir. 2020) .....................................................38, 43, 45, 51

*Doe v. Purdue*,
   928 F.3d 652 (7th Cir. 2019) .......................................................*passim*

*Doe v. Samford Univ.*,
   29 F.4th 675 (11th Cir. 2022) .....................................................38, 45, 46, 49

*Doe v. Trustees of Boston College*,
   892 F.3d 67 (1st Cir. 2019)............................................................ 49-50, 51

*Doe v. Univ. of Arkansas-Fayetteville*,
   974 F.3d 858 (8th Cir. 2020) ..............................................................*passim*

*Doe v. Univ. of Cincinnati*,
  872 F.3d 393 (6th Cir. 2017) ............................................................16, 20, 29

*Doe v. Univ. of Denver*,
  1 F.4th 830 (10th Cir. 2021) ("*Denver II*") ......................................38, 40, 50

*Doe v. Univ. of Sciences*,
  961 F.3d 203 (3d Cir. 2020) ........................................................................38

*Doe v. Univ. of the S.*,
  687 F.Supp.2d 744 (E.D. Tenn. 2009) ........................................................34

*Donohue v. Baker*,
  976 F. Supp. 136 (N.D.N.Y. 1997) ..............................................................27

*Edwards v. City of Goldsboro*,
  178 F.3d 231 (4th Cir. 1999) ......................................................................31

*Emanuelson v. Univ. of N. Car. at Greensboro*,
  2018 WL 1779342 (M.D. N. C. Apr. 12, 2018)................................17, 19, 20

*Ex Parte Young*,
  209 U.S. 123 (1908).....................................................................................12

*Fairfax v. CBS Corporation*,
  2 F.4th 286 (4th Cir. 2021) .........................................................................14

*Flaim v. Medical Coll. of Ohio*,
  418 F.3d 629 (6th Cir. 2005) .................................................................16, 20

*Garnett v. Remedi Senior Care of Virginia LLC*,
  892 F.3d 140 (4th Cir. 2018) ......................................................................14

*Gerner v. Cnty. of Chesterfield, Va.*,
  674 F.3d 264 (4th Cir. 2012) ......................................................................15

*Goss v. Lopez*,
  419 U.S. 565 (1975).................................................................................17, 19

*Henson v. Honor Comm. of Univ. of Va.*,
  719 F.2d 69 (4th Cir. 1983) .............................................................17, 18, 19

*Hickory Neighborhood Def. League v. Burnley*,
    703 F. Supp. 1208 (W.D.N.C. 1988) ...............................................................34

*Hickory Neighborhood Def. League v. Skinner*,
    893 F.2d 58 (4th Cir. 1990) ...........................................................................34

*Joint Anti-Fascist Committee v. McGrath*,
    341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817 (1951) .......................................21

*Lilly v. Virginia*,
    527 U.S. 116 (1999) .......................................................................................27

*Mangum v. Hallembaek*,
    910 F.3d 770 (4th Cir. 2018) .........................................................................34

*Marshall v. Jerrico, Inc.*,
    446 U.S. 238 (1980) .......................................................................4, 13, 20, 21

*Mathews v. Eldridge*,
    424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) ......................................21

*Menaker v. Hofstra*,
    935 F.3d 20 (2d Cir. 2019) .....................................................................*passim*

*Monell v. N.Y.C. Dep't of Soc. Servs.*,
    436 U.S. 658 (1978) .......................................................................................12

*Morrissey v. Brewer*,
    408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) ..................................16

*Mylan Labs., Inc. v. Matkari*,
    7 F.3d 1130 (4th Cir. 1993) ..........................................................4, 15, 24, 31

*Natural Resources Defense Council, Inc. v. United States EPA*,
    966 F.2d 1292 (9th Cir. 1992) .......................................................................34

*Ostrzenski v. Seigel*,
    177 F.3d 245 (4th Cir. 1999) ........................................................4, 15, 24, 31

*Schwake v. Arizona Bd. of Regents*,
    967 F.3d 940 (9th Cir. 2020) .........................................................................38

[viii]

*Shaw v. Bd. of Trs. of Frederick Cnty. Col.*,
   549 F.2d 929 (4th Cir. 1976) ........................................................34

*Sheppard v. Visitors of Va. State Univ.*,
   993 F.3d 230 (4th Cir. 2021) ................................................*passim*

*Smith v. State of Illinois*,
   390 U.S. 129 (1968)................................................................27, 29

*Tigrett v. Rector & Visitors of the Univ. of Va.*,
   290 F.3d 620 (4th Cir. 2002) .......................................................35

*Vega v. Saleeby*,
   2004 WL 3334816 (D.S.C. July 12, 2004)............................*passim*

*Yusuf v. Vassar College*,
   35 F.3d 709 (2d Cir. 1994) ..........................................................49

**Statutes:**

20 U.S.C. § 1681 *et seq.*,................................................................*passim*

20 U.S.C. § 1681(a) ................................................................47, 48

28 U.S.C. § 1291 ...............................................................................3

28 U.S.C. § 1331 ...............................................................................3

28 U.S.C. § 1343 ...............................................................................3

42 U.S.C. § 1983 ................................................................. 1-2, 3, 11

**Constitutional Provisions:**

U.S. Const. amend. XIV ...................................................................2, 11

[ix]

**Regulations:**

34 C.F.R. § 106.45 ................................................................51

34 C.F.R. § 106.45(b)(6)(i) ...............................................30

**Rules:**

Fed. R. Civ. P. 12(b)(6)...........................................*passim*

Fed. R. App. P. 4(a)(1)(A) .................................................3

**Other Authorities:**

"An Unbiased Tribunal." H. Friendly, "Some Kind of Hearing,"
    123 U. Pa. L. Rev. 1267 (1975) .................................... 21-22

*Secretary DeVos Announces New Title IX Regulation,"*
*https://www.youtube.com/watch?v=hTb3yfMNGuA;* U.S. Department of
Education Press Release, "Secretary DeVos Takes Historic Action to
Strengthen Title IX Protections for All Students,"
    May 6, 2020 .........................................................30

"Transcript: Betsy DeVos's Remarks on Campus Sexual Assault,"
    Washington Post, Sept. 7, 2017 .........................................30

A. Scalia, *Reading Law: The Interpretation of Legal Texts*
    (West Pub. 2012)......................................................48

## PRELIMINARY STATEMENT

Plaintiff-Appellant John Doe ("John Doe") submits this Appellant Brief to reverse the District Court's July 19, 2022 Final Judgment dismissing the Complaint with prejudice (JA79), and the District Court's July 18, 2022 Order Granting Defendants' Rule 12(b)(6) Motion To Dismiss (JA49-78).

John Doe was a scholarship cadet at Defendant The Citadel, The Military College of South Carolina ("The Citadel"), until he was dismissed with leave to apply for possible readmission after one year. The basis of that sanction was John Doe was found, erroneously, to have committed an act of sexual violence in non-consensual physical contact of a sexual nature by rubbing his front side against the backside of a female cadet Jane Roe at the Law Barracks Sally Port in violation of The Citadel's student code. "As a result, John Doe lost his Marine scholarship which he needed to attend The Citadel, presently cutting him off from his hope and dream of becoming a military officer, and John Doe has further been denied employment positions and has had to explain to other schools to which he was seeking admission what happened at The Citadel with respect to the disciplinary case. John Doe, however, did not commit the act of which he was accused." (JA6-7, JA33.) It took gender bias and a denial of due process to produce the result here. (JA8, JA34-35.)

The District Court should be reversed because John Doe's Complaint (JA6-44) sufficiently pleaded claims for (i) denial of due process in violation of 42 U.S.C.

[1]

§ 1983 and the Fourteenth Amendment and (ii) Title IX sex discrimination in violation of 20 U.S.C. § 1681.

The District Court erred in dismissing the due process claim because John Doe alleged facts that allow the Court to draw the reasonable inference that John Doe was denied due process, as he was not afforded "a fair opportunity to be heard" before "an unbiased tribunal," cross-examination was improperly cut off, and an arbitrary and capricious decision was rendered. The lack of impartiality and neutrality of the Commandant's Board could not be cured by an Appeal Board affirmance that clearly lacked merit and from which bias could be inferred; the prejudicial error of the Commandant's Board's cutting off of cross-examination of Jane Roe from the start concerning her credibility could not be justified contrary to the pleading of the Complaint, especially when credibility was important; and the decision of the Commandant's Board affirmed by the Appeal Board was more than contrary to the substantial weight of the evidence, it was arbitrary and capricious.

The District Court erred in dismissing the Title IX sex discrimination claim because John Doe alleged facts that allow the Court to draw the reasonable inference that The Citadel discriminated against John Doe on the basis of sex. The Complaint pleads, *inter alia*, that "believe the woman gender bias" explain the clearly irregular adjudicative decision-making contrary to the overwhelming weight of the evidence in this case exonerating John Doe.

[2]

## STATEMENT OF JURISDICTION

Subject matter jurisdiction for the District Court existed under 28 U.S.C. §§ 1331 and 1343 because John Doe's claims were brought under 42 U.S.C. § 1983 for denial of constitutional due process and under Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, for sex discrimination. These claims are federal law claims brought under the Constitution and statutes of the United States, making 28 U.S.C. § 1331 applicable; and these claims are civil rights claims, making 28 U.S.C. § 1343 applicable. The District Court had personal jurisdiction over all Defendants because they were citizens of the State of South Carolina. (JA9.)

On July 18, 2022, the District Court (Norton, J.) issued an "Order" granting Defendants' Rule 12(b)(6) motion dismissing John's due process and Title IX claims. (JA49-78, reported at 2022 WL 2806473 (D.S.C. July 18, 2022).) On July 19, 2022, the Clerk of the Court entered a "Judgment in a Civil Action" dismissing the Complaint with prejudice. (JA79.) The Notice of Appeal was filed August 9, 2022 (JA80), which was less than 30 days after the entry of final judgment as required by Rule 4(a)(1)(A) of the Federal Rules of Appellate Procedure and which effectively invoked the appellate jurisdiction of this Court under 28 U.S.C. § 1291. The appeal to this Court is one of right pursuant to 28 U.S.C. § 1291 and Rule 4(a)(1)(A) of the Federal Rules of Appellate Procedure.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.      Has John Doe plausibly alleged that he was denied due process, necessary so that cases are not decided "on the basis of an erroneous or distorted conception of the law or the facts," *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980), because he was not afforded "a fair opportunity to be heard" before "an unbiased tribunal," cross-examination was improperly cut off, and an arbitrary and capricious decision was rendered?

2.      Has John Doe alleged facts that raise a plausible inference that The Citadel discriminated against John on the basis of sex applying this Court's decision in *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 235 (4th Cir. 2021), adopting Judge Barrett's test, now the test in most Circuits, stated in *Doe v. Purdue*, 928 F.3d 652, 667-668 (7th Cir. 2019)?

## STATEMENT OF THE CASE

The District Court recognized that "[w]hen considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and should view the complaint in a light most favorable to the plaintiff. *Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999); *Mylan Labs., Inc. v. Matkari*, 7 F.3d [1130,] at 1134 [(4th Cir. 1993)]." (JA51.) John Doe's Complaint (JA6-44) at paragraphs 6-10 identify the parties (J9), at paragraphs 14-73 alleges the facts as to the federal regulatory environment to campus sexual misconduct tribunals (JA10-30), at paragraphs 1-5

[4]

and 74-88 sets forth the basic facts as to what happened in the case (JA30-35), at paragraphs 89-124 state the claims (JA35-43), and in the Prayer for Relief and Demand for Jury states the relief requested and the mode of trial (JA43-44).

A.    **The Parties**.

John Doe is a natural person presently residing in New Jersey.  Defendant The Citadel is a state-incorporated college with an address in Charleston, South Carolina, is one of six senior military colleges in the United States, and has an undergraduate military program in which the student cadets pursue bachelor's degrees and live on campus. Defendant General Glenn M. Walters ("Defendant Walters") is the President of The Citadel, Defendant Valerie Mercado ("Defendant Mercado") is the current Title IX Coordinator at The Citadel, and Defendant Janet Shealy ("Defendant Shealy") is the Director of Cadet Advocacy, Response and Education ("CARE"), the sexual assault center at The Citadel; the three individual Defendants are being sued in their respective official capacities.  (JA9.)

B.    **Jane Roe's Accusations and John Doe's Denials**.

Jane Roe's college complaint alleged three incidents, one at the Mess Hall, one at Jenkins Hall, and one at the Law Barracks Sally Port. John Doe denied all three incidents in writing and additionally asserted that: (i) he would not jeopardize his Marine scholarship by engaging in the accused behavior; (ii) he would also not engage in the accused behavior because he was not raised that way; and (iii) he was

[5]

never in Jenkins Hall alone with Jane Roe -- all that happened there was that he left Marine Study Hall with one of his fellow Marine cadets, saw Jane Roe in Jenkins Hall and stuck his head in (but did not go in) to ask how she was doing.  (JA31.)

John Doe requested video surveillance footage at the Law Barracks Sally Port to show the accusation, originally said to have occurred in early October 2019, was not true.  Jane Roe, knowing of John Doe's request for video surveillance footage, changed the date of the incident to on or about September 12, 2019 when surveillance footage was not available.  (JA31, JA32.)

## C.    The Commandant's Board Hearing.

At the Commandant's Board hearing, when Cadet "Noa" said that John Doe was at the Marine lab in the period 16:00-18:00, that meant for the charges, somehow John Doe had to be with Jane Roe by 18:00, a distinct improbability consistent with John Doe's denial of seeing Jane Roe that day at the Law Barracks Sally Port; yet, the Board questions were still aimed at establishing that somehow it was possible that John Doe did go by Jane Roe according to Jane Roe's accusation. (JA32.)

At the Board hearing, when Cadet "Sha" said that John Doe did not go into Jenkins Hall, there was extensive questioning by Jane Roe aimed at, among other things, establishing "Sha" told her John Doe was a bad guy, but "Sha" did not recall saying anything like that and also said that he did not think John Doe would assault Jane Roe and that John Doe was a friendly guy.  (JA32.)

[6]

At the Board hearing, Jane Roe gave an unsworn account of the three alleged incidents, but when John Doe's representative asked Jane Roe about "false memory," the Board President cut off questioning.  (JA32.)

John Doe presented his case, starting with his own account: that he did not enter Jenkins Hall, just stuck his head in and said hello; that he denied the alleged Mess Hall incident; and that he denied contact with Jane Roe at the Law Barracks Sally Port, that on the day in question with regard to Law Barracks Sally Port, time he was coming from a Marine lab and his hands would not have been free to grope Jane Roe as he was carrying his Kevlar and rifle and that he had sought video surveillance which did not go back to September 12, 2019 -- Jane Roe changed the date of the incident from a date in early October 2019 to on or about September 12, 2019 and video footage of the Law Barracks Sally Port was not available before early October 2019.  Character witnesses for John Doe said he would not have engaged in the alleged behavior.  (JA32-33.)

The Board deemed not relevant that Jane Roe changed the supposed date of the incident from a date in early October 2019 to on or about September 12, 2019 and video footage of the Law Barracks Sally Port was not available before early October 2019; and Board President Fortenberry asked John Doe a series of questions that Jane Roe had asked Cadet "Rya" aimed at ascertaining why John Doe did not stop talking to Jane Roe.  (JA32-33.)

[7]

D.    **The Commandant's Board Ruling**.

The Commandant's Board ruled that it was more likely than not that John Doe committed an act of sexual violence in non-consensual physical contact of a sexual nature by rubbing his front side against the backside of Jane Roe at the Law Barracks Sally Port.  The Board's decision was purportedly based on judging Jane Roe and her female friend more credible than John Doe and the witnesses who had corroborated John Doe's account.  But the Board's credibility determination was made contrary to: (i) the change in Jane Roe's date of the alleged incident at the Law Barracks Sally Port from early October 2019 to September 12, 2019, that conveniently made unavailable video footage of the Law Barracks Sally Port; (ii) the difference between Jane Roe's complaint description of the incident (groping) to what the Commandant's Board supposedly found (rubbing up against); (iii) the non-acceptance of two of the three accusations made by Jane Roe; (iv) John Doe's consistent denial of all the accusations; (v) the witnesses for John Doe who denied that John Doe had engaged in the accused incidents and that they never saw John Doe engage in any sexual harassment or sexually violent behavior toward Jane Roe; and (vi) John Doe's character witnesses.  (JA33-34.)

The Complaint alleges that the Commandant's Board made a "believe in the woman" gender biased decision that was not "an objective assessment of the evidence." (JA33-34.)  John Doe was dismissed from The Citadel with leave to re-

[8]

apply in one year; but as a result of the dismissal, John Doe lost his Marine scholarship which he needed to attend the school.  (JA6-7.)

**E.    <u>John Doe's Appeal</u>.**

John Doe submitted a timely appeal that asserted: (i) he was presenting new evidence in two additional cadets who were on guard duty on September 12, 2019, and whose eyewitness testimony refuted Jane Roe's story about John Doe engaging in sexual violence against her; (ii) CARE's Defendant Shealy did not provide a level playing field, as she was present for and assisted Jane Roe; (iii) there was a conflict of interest in Commander Adcock serving as the Board's recorder because he had been the Battalion TAC Officer for Jane Roe in the 2018-2019 school year; and (iv) there was a denial of due process stemming from the change in date of the alleged incident at the Law Barracks Sally Port.  (JA34.)

John Doe's appeal was denied: (i) the new evidence was rejected on the purported grounds that John Doe could have presented it before and it was said not to change the Commandant's Board's decision; (ii) the objection to the conduct of CARE's Defendant Shealy was rejected on the purported ground she had acted in keeping with CARE's mission; (iii) the objection to the conflict of interest in Commander Adcock serving as recorder for the Board was rejected on the purported ground that Commander Adcock, as recorder, was a non-voting member of the Commandant's Board; and (iv) the due process objection was rejected on the

[9]

purported grounds that the Board followed its rules and relied upon the eyewitness testimony of Cadet "Er" in reaching its decision. (JA34.)

The Complaint alleged five reasons why the denial of John Doe's appeal were without merit: (i) the new evidence in two additional cadets who were on guard duty on September 12, 2019, and whose eyewitness testimony refuted Jane Roe's story about John Doe engaging in sexual violence against her would have made unassailable the evidence against finding John Doe guilty of rubbing his front against Jane Roe's backside; (ii) the assistance of CARE's Defendant Shealy to Jane Roe created an uneven playing field that it was the responsibility of The Citadel under Title IX to address; (iii) there was at least an appearance of impropriety in having Jane Roe's former Battalion TAC Officer function in any capacity in the disciplinary proceeding; (iv) the due process defect of changing the date of the alleged Sally Port incident was not mitigated by the Commandant's Board's reliance upon its own rules without compliance with the requirements of constitutional due process; and (v) reliance upon the purported eyewitness testimony of Cadet "Er" was not justified because it was inconsistent with Jane Roe's story and video surveillance footage was available for the date of the alleged Law Barracks Sally Port incident originally given by Jane Roe. (JA32, JA34-35.)

**F.** __Ongoing Injury__.

After the disciplinary decision, John Doe lost his Marine scholarship that had enabled him to attend The Citadel, and his disciplinary record at The Citadel is causing him to have to explain the disciplinary case, causing him to lose education and employment opportunities and to suffer ongoing injury. (JA6-7, JA35.)

**G.** __John Doe's Causes of Action__.

John Doe's Complaint pleads two causes of action: the First Cause of Action is for 42 U.S.C. § 1983 denial of Fourteenth Amendment due process against individual Defendants Walters, Mercardo and Shealy in their respective official capacities; and the Second Cause of Action is for Title IX sex discrimination against The Citadel. (JA35-43.)

**H.** __The District Court Order of Dismissal__.

The District Court granted Defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The District Court first gave a brief "Background" statement that did not state *inter alia*: (i) the factual details making Jane Roe's complaints implausible; (ii) Jane Roe's female friend only partly corroborating Jane Roe's account, which was in contrast to the strong testimony supporting John Doe; (iii) two of three complaints made by Jane Roe being so groundless they were rejected even by the Commandant Board; (iv) as to the one complaint sustained by the Commandant Board, Jane Roe

[11]

changing the date of the alleged incident in order to avoid video being available that would disprove it; and (v) the specifics of the school appeal and its rejection that did reflect error and bias.  (JA49-50.)

Before turning to the due process and Title IX issues to be decided, the District Court: (i) stated the law on motions to dismiss (JA51); (ii) upheld pseudonymity for John and Jane Roe (JA52-53); (iii) ruled that John had properly invoked the exception of *Ex Parte Young*, 209 U.S. 123 (1908), to sovereign immunity (JA54-56); (iv) ruled that the individual defendants were sufficiently connected to the alleged wrongdoing to be properly named on the due process claim (JA56-60); (v) ruled that the "policy or custom" requirement of *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), is a liability standard for suits against municipalities and has no application to state officers who are immune from suit for damages but may be subject to suit under *Ex Parte Young* (JA60-62); and (vi) ruled that John Doe had a constitutionally protected interest in his education so as to trigger the requirement of due process (JA62).

The District Court's rulings dismissing, under Rule 12(b)(6), John Doe's due process claim (JA62-69) and John Doe's Title IX claim (JA69-77) are the subject of the Argument in this Appellant Brief.

[12]

## SUMMARY OF ARGUMENT

John Doe alleged facts that allow the Court to draw the reasonable inference that John Doe was denied due process. Here, John Doe was not afforded "a fair opportunity to be heard" before "an unbiased tribunal," cross-examination was improperly cut off, and an arbitrary and capricious decision was rendered. The practical reason why due process matters is so that cases are not decided "on the basis of an erroneous or distorted conception of the law or the facts." *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980).  The lack of impartiality and neutrality of the Commandant's Board could not be cured by an Appeal Board affirmance that clearly lacked merit and from which bias could be inferred.  The Commandant's Board's cutting off of cross-examination of Jane Roe from the start concerning her credibility could not be justified contrary to the pleading of the Complaint, especially when credibility was important.  The decision finding John Doe responsible was more than contrary to the substantial weight of the evidence, it was arbitrary and capricious (*e.g.*, the Commandant's Board ruled Jane Roe's change of date to avoid video evidence was irrelevant) -- the overwhelming evidence supported finding John Doe not responsible for any of the complaints by Jane Roe (even the Commandant's Board dismissed two of three accusations) and the one accusation regarding the alleged incident at the Law Barracks Sally Port was decidedly against the evidence.

[13]

John Doe alleged facts allowing the Court to draw the reasonable inference that The Citadel discriminated against John Doe on the basis of sex. This Court's decision in *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 235 (4th Cir. 2021), adopted Judge Barrett's test, now the test in most Circuits, stated in *Doe v. Purdue*, 928 F.3d 652, 667-668 (7th Cir. 2019), that a plaintiff must allege facts that, "if true, raise a plausible inference that the university discriminated against John [Doe] on the basis of sex."  The Complaint pleads, *inter alia*, that "believe the woman gender bias" explain the clearly irregular adjudicative decision-making contrary to the evidence in this case.

## ARGUMENT

## I.

## THE STANDARD OF REVIEW

The District Court's grant of a Rule 12(b)(6) motion to dismiss is reviewed *de novo*, applying the same standards as the District Court. *Fairfax v. CBS Corporation*, 2 F.4th 286 (4th Cir. 2021) (""We review *de novo* the grant of a motion to dismiss for failure to state a claim," applying the same standards as the district court."); *Garnett v. Remedi Senior Care of Virginia LLC*, 892 F.3d 140, 142 (4th Cir. 2018) (""We 'review *de novo* the  grant  of  a motion to dismiss for  failure  to  state  a  claim.'"); *DePaola v. Clarke*, 884 F.3d 481, 484 (") (4th Cir. 2018) ("We review *de novo* a district court's decision  granting  a motion to dismiss"); *Cruz v. Maypa*, 773 F.3d

[14]

138, 143 (4th Cir. 2014) ("We review *de novo* the district court's grant of a motion to dismiss"); *Gerner v. Cnty. of Chesterfield, Va.*, 674 F.3d 264, 266 (4th Cir. 2012) ("We review *de novo* the grant of a motion to dismiss for failure to state a claim. In so doing, we must accept as true all of the factual allegations contained in the complaint.").

The District Court recognized: (i) that "[a] Rule 12(b)(6) motion should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief[,] *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)"; (ii) that "[w]hen considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and should view the complaint in a light most favorable to the plaintiff[,] *Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999)[,] *Mylan Labs., Inc.*, 7 F.3d at 1134"; (iii) that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); and (iv) that "'[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' *Id.*" (JA51.)

The District Court stated the general rules governing motions to dismiss correctly, but as a result of certain errors of law and treatment of pleaded facts, the

District Court did not properly apply the rules governing Rule 12(b)(6) motions to

dismiss as to whether the due process claim and the Title IX claim were stated.

## II.

### JOHN DOE HAS ALLEGED FACTS THAT ALLOW THE COURT TO DRAW THE REASONABLE <u>INFERENCE THAT JOHN DOE WAS DENIED DUE PROCESS</u>

In *Doe v. Miami*, 882 F.3d 579, 599-600 (6th Cir. 2018), the Sixth Circuit

stated:

> Procedural due process is "implicated by higher education disciplinary decisions." *Flaim [v. Medical Coll. of Ohio*], 418 F.3d [629,] at 633 [(6th Cir. 2005)]; *see also Doe v. Univ. of Cincinnati*, 872 F.3d 393, 399 (6th Cir. 2017). "Suspension 'clearly implicates' a protected property interest, and allegations of sexual assault may 'impugn [a student's] reputation and integrity, thus implicating a protected liberty interest.'" *Univ. of Cincinnati*, 872 F.3d at 399 (quoting [*Doe v.*] *Cummins*, 662 Fed.Appx. [437,] at 445) [(6th Cir 2016)].

> Because John's suspension implicates a constitutionally protected interest, "the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *see also Univ. of Cincinnati*, 872 F.3d at 399.

Because John Doe had a constitutionally protected interest, the question is

what process was due before he was subject to an expulsion with leave to re-apply.

As stated in the Summary of Argument and discussed in this section of the

Argument, John Doe has plausibly alleged that he was denied due process because

John Doe was not afforded "a fair opportunity to be heard" before "an unbiased

tribunal," cross-examination was improperly cut off, and an arbitrary and capricious decision was rendered. The District Court erred in not so concluding.

## A.    <u>The District Court's Due Process Assumptions and Errors In Analysis</u>.

The District Court prefaced its due process analysis by recognizing five general points of due process law. (JA62-63.)

*First*, before the deprivation of constitutionally protected life, liberty or property can constitutionally occur, due process requires notice and opportunity to be heard, citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) (two terminated school district employees stated due process claim because they were not given an opportunity to respond to complaints against them). (JA62.)

*Second*, the amount of due process depends upon the interest at stake, citing *Goss v. Lopez*, 419 U.S. 565, 575-576 (1975) (students facing temporary suspension from public school were entitled to protection under the due process clause and that due process required, in connection with suspensions of up to ten days, that such a student be given notice of charges and an opportunity to present his version to authorities preferably prior to removal from school). (JA62.)

*Third*, in the academic setting, notice and opportunity to be heard is required, citing *Henson v. Honor Comm. of Univ. of Va.*, 719 F.2d 69 (4th Cir. 1983), and *Emanuelson v. Univ. of N. Car. at Greensboro*, 2018 WL 1779342 (M.D. N. C. Apr. 12, 2018) (due process claim upheld where for graduate nursing school expulsion,

[17]

plaintiff's attorney was excluded, a comprehensive list of evidence was not provided, and calling or questioning of witnesses was not allowed by plaintiff). (JA62-63.)

*Fourth*, in the academic setting, due process may be satisfied by less than trial-type procedures, citing *Henson v. Honor Comm. of Univ. of Va.*, 719 F.2d 69 (4th Cir. 1983), a case involving the improper removal by the accused law student of a moot court problem from national headquarters. (JA63.)

*Fifth*, while "no court has yet prescribed a precise paradigm that is required for when a student is removed from school," the District Court had previously recognized in *Vega v. Saleeby*, 2004 WL 3334816, at *6 (D.S.C. July 12, 2004), a case involving hazing, certain non-exclusive benchmarks -- the accused student receives notice of charges, is provided the names of witnesses, is provided either a summary of their testimony or the right cross-examine the witnesses, and is given a hearing at which to present a defense, and a decision imposing serious disciplinary action should be "based upon ample evidence such that the decision is not arbitrary or capricious." (JA63.)

The District Court still ruled that the Complaint fails to allege plausibly a denial of due process, but that ruling rested upon six errors of analysis: (i) the failure to recognize the implication for due process from the fact sexual misconduct was alleged; (ii) the failure to recognize the denial of due process from the lack of

[18]

impartiality and neutrality in the decision-making Commandant's Board, which was not cured by an Appeal Board that rendered an erroneous decision; (iii) the failure to recognize the denial of due process from the improper denial of cross-examination at the Commandant's Board hearing; (iv) the failure to recognize the denial of due process in the arbitrary and capricious decision rendered by the Commandant's Board affirmed by the Appeal Board; (v) the reliance upon what procedures John Doe did receive as overwhelming the lack of impartiality and neutrality, the cutting off of cross-examination, and the arbitrary and capricious decision-making; and (vi) the confusion of affording due process and the compliance with school policies.

B.  **The District Court's Failure To Recognize The Implication For Due Process From The Fact That Sexual Misconduct Was Alleged.**

The District Court's recitation of basic due process principles rested on *Cleveland Bd. of Educ. v. Loudermill*, *Goss v. Lopez*, *Henson v. Honor Comm. of Univ. of Va.*, *Emanuelson v. Univ. of N. Car. at Greensboro*, and *Vega v. Saleeby*. None of these cases, however, involved allegations of student sexual misconduct. *Cleveland Bd. of Educ. v. Loudermill* was brought by two terminated school district employees over complaints against one, a security guard, for dishonesty in filling out a job application and against the other, a bus mechanic, for failing an eye examination. *Goss v. Lopez* was brought by students facing temporary 10-day suspensions for disruptive or disobedient conduct. *Henson v. Honor Comm. of Univ. of Va.* was brought by a law student who had allegedly removed a moot court

[19]

problem from national headquarters. *Emanuelson v. Univ. of N. Car. at Greensboro* was brought by a graduate nursing student who was dismissed for alleged poor performance and unsafe practices. *Vega v. Saleeby* was brought by a Citadel cadet suspended for two academic semesters for hazing.

As recognized by the Sixth Circuit in *Doe v. Miami*, 882 F.3d at 599-600, and in *Doe v. Univ. of Cincinnati*, 872 F.3d 393 (6th Cir. 2017), sexual misconduct cases involve different interests and concerns. The Sixth Circuit in *Doe v. Univ. of Cincinnati*, 872 F.3d at 400, explained:

> Doe contends, and UC does not dispute, that the private interest at stake in this case is significant. A finding of responsibility for a sexual offense can have a "lasting impact" on a student's personal life, in addition to his "educational and employment opportunities," especially when the disciplinary action involves a long-term suspension. . . .

> The more serious the deprivation, the more demanding the process. And where the deprivation is based on disciplinary misconduct, rather than academic performance, "we conduct a more searching inquiry." *Flaim [v. Medical Coll. of Ohio]*, 418 F.3d [629,] at 634 [(6th Cir. 2005)].

The District Court did not recognize the implication for due process from the fact sexual misconduct was alleged. A more searching inquiry was required here.

**C.    The District Court's Failure To Recognize The Denial Of Due Process From The Lack Of Impartiality And Neutrality Of Commandant's Board, Not Cured By An Appeal Board's Erroneous Affirmance.**

**1.    The Required Impartiality and Neutrality in Disciplinary Cases.**

The District Court dismissed the requirement of impartiality and neutrality expressed unanimously by the U.S. Supreme Court in *Marshall v. Jerrico, Inc.*, 446

U.S. 238, as applicable only to civil and criminal cases. (JA63.)  But that distinction, in suggesting that due process is provided where there is a partial and biased decision-maker in a disciplinary proceeding, flies in the face of sensibility and is contrary to the fundamental due process law that was expressed in *Marshall v. Jerrico, Inc.*, 446 U.S. at 242, albeit in connection with civil and criminal cases:

> The Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases. This requirement of neutrality in adjudicative proceedings safeguards the two central concerns of procedural due process, the prevention of unjustified or mistaken deprivations and the promotion of participation and dialogue by affected individuals in the decision-making process. See *Carey v. Piphus*, 435 U.S. 247, 259–262, 266–267, 98 S.Ct. 1042, 1043, 1050–1052, 1053, 1054, 55 L.Ed.2d 252, (1978). The neutrality requirement helps to guarantee that life, liberty, or property will not be taken on the basis of an erroneous or distorted conception of the facts or the law. See *Mathews v. Eldridge*, 424 U.S. 319, 344, 96 S.Ct. 893, 907, 47 L.Ed.2d 18 (1976). At the same time, it preserves both the appearance and reality of fairness, "generating the feeling, so important to a popular government, that justice has been done," *Joint Anti-Fascist Committee v. McGrath*, 341 U.S. 123, 172, 71 S.Ct. 624, 649, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring), by ensuring that no person will be deprived of his interests in the absence of a proceeding in which he may present his case with assurance that the arbiter is not predisposed to find against him.

The requirement of neutrality has been jealously guarded by this Court.

Notably, Second Circuit Judge Henry Friendly's influential law review article on due process hearings "compile[d] one list enumerating factors that have been considered the elements of a fair hearing, roughly in order of priority," and at the top of Judge Friendly's list was "An Unbiased Tribunal." H. Friendly, "Some Kind of

[21]

Hearing," 123 U. Pa. L. Rev. 1267, 1279-1280 (1975). Given the critical element role that an impartial tribunal plays in achieving a fair hearing, a proper due process analysis must incorporate consideration of the due process neutrality requirement even in university disciplinary cases involving allegations of sexual misconduct.

The District Court nevertheless does consider the impartial tribunal requirement because the District Court recognizes the correct ruling in *Davis v. Baltimore City Cmty. Coll.*, 2019 WL 5636362 *5 (D.Md. Oct. 31, 2019) (emphasis added): "When a student faces expulsion, the requirements of due process are met when the student received advance notice of the charges, a fair opportunity to be heard, and *an impartial decision-maker*." The Court in *Davis v. Baltimore City Cmty. Coll.* correctly stated, for student disciplinary cases where the student is facing expulsion, the requirements of due process that general due process principles do lead to stating.

### 2.    <u>The Pleaded Lack of Impartiality and Neutrality.</u>

The District Court then ostensibly turns to the pleading of lack of neutrality, but cites only two concerns: that Defendant Shealy gave support and assistance only to Jane Roe at the hearing and that Commander Adcock who served as the Board's recorder had been the Battalion TAC Officer for Jane Roe in the 2018-2019 school year. (JA34.) The District Court does not deny that these pleaded facts reflected the lack of impartiality and neutrality at the Commandant's Board.

[22]

John Doe's case of the lack of impartiality and neutrality was, however, broader and more undeniable. The Complaint gives an account of the hearing to show the factual basis of the lack of due process required impartiality in the hearing. (JA31-33.) The Complaint does allege what the District Court identified: there was assistance at the hearing that was provided to Jane Roe by Defendant Janet Shealy but was not provided to John Doe and there was a conflict of interest in Commander Adcock serving as the Board's recorder when he had been the Battalion TAC Officer for Jane Roe in the 2018-2019 school year. (JA31-32, JA34.) But there was more. The Complaint alleges that John Doe had sought video surveillance for the alleged incident at the Law Barracks Sally Port, but Jane Roe conveniently changed the supposed date of the incident from a date in early October 2019 to on or about September 12, 2019, and video footage of the Law Barracks Sally Port was not available before early October 2019, which was deemed (incredibly) not relevant by the Commandant's Board. (JA32-33.) The Complaint alleges that when Cadet "Noa" testified that John Doe was at the Marine lab in the period 16:00-18:00, it meant it was a distinct improbability that somehow John Doe was with Jane Roe by 18:00; yet, the Board's questions were aimed at establishing that somehow it was possible John Doe did go by Jane Roe according to Jane Roe's accusation. (JA32.)

Only a biased tribunal would treat the alleged Law Barracks Sally Port incident the way the Board did; only a biased tribunal would allow one-sided

[23]

assistance; only a biased tribunal would deny cross-examination to protect Jane Roe from impeachment, as discussed below (pp. 2-31); only a biased tribunal would render the decision it did, as also discussed below (pp. 31-35) (JA31-34).

### 3.    The Appeal Board Affirmance Did Not Cure The Commandant's Board's Bias.

In the end, the only response the District Court gives to deny the denial of due process from the lack of impartiality and neutrality is that it would be an "unwarranted" inference that John Doe faced two biased tribunals. (JA64.)  The District Court asserts that the Appeal Board was not alleged to be biased (JA64), but the District Court's failure to address what the Complaint alleged about the Appeal Board is contrary to the motion to dismiss rule that "[w]hen considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and should view the complaint in a light most favorable to the plaintiff." *Ostrzenski v. Seigel*, 177 F.3d at 251; *Mylan Labs., Inc.*, 7 F.3d at 1134. What was alleged about the Appeal Board certainly establishes the Appeal Board's error in affirming the Commandant's Board's decision and permits an inference of bias on the part of the Appeal Board.  The biased Commandant's Board decision was not cured by the Appeal Board's review.

As discussed above, John Doe submitted a timely appeal that made four arguments.  *First*, new evidence was presented in two additional cadets who were on guard duty on September 12, 2019, and whose eyewitness testimony refuted Jane

[24]

Roe's story about John Doe engaging in sexual violence against her.  *Second*, CARE's Defendant Shealy did not provide a level playing field, as she was present for and assisted only Jane Roe. *Third*, there was a conflict of interest in Commander Adcock serving as the Board's recorder because he had been the Battalion TAC Officer for Jane Roe in the 2018-2019 school year.  *Fourth*, there was a denial of due process stemming from the change in date of the alleged incident at the Law Barracks Sally Port.  (JA34.)

John Doe's appeal was denied.  The new evidence was rejected on the stated grounds that John Doe could have presented it before and it was said not to change the Commandant Board's decision. The objection to the conduct of CARE's Defendant Shealy was rejected on the ground she had acted in keeping with CARE's mission.  The objection to the conflict of interest in Commander Adcock serving as recorder for the Board was rejected on the ground that Commander Adcock, as recorder, was a non-voting member of the Commandant Board. The due process objection concerning the change of date of the alleged Sally Port incident was rejected on the stated grounds that the Board followed its rules and relied upon the eyewitness testimony of Cadet "Er" in reaching its decision.  (JA34.)

The Complaint alleged five reasons why the denial of John Doe's appeal was without merit.  *First*, the new evidence in two additional cadets who were on guard duty on September 12, 2019, and whose eyewitness testimony refuted Jane Roe's

story about John Doe engaging in sexual violence against her would have made unassailable the evidence against finding John Doe guilty of rubbing his front against Jane Roe's backside. *Second*, the assistance of CARE's Defendant Shealy to only Jane Roe created an uneven playing field that it was the responsibility of The Citadel under Title IX to address. *Third*, there was at least an appearance of impropriety in having Jane Roe's former Battalion TAC Officer function in any capacity in the disciplinary proceeding. *Fourth*, the due process defect of changing the date of the alleged Sally Port incident was not mitigated by the Commandant's Board's reliance upon its own rules without compliance with the requirements of constitutional due process. *Fifth*, reliance upon the purported eyewitness testimony of Jane Roe's friend Cadet "Er" was not justified because it was inconsistent with Jane Roe's story and video surveillance footage was available for the date of the alleged Law Barracks Sally Port incident originally supplied by Jane Roe. (JA32, JA34-35.)

Given the pleaded clear lack of merit to the Appeal Board decision, it cannot be used to cure a biased Commandant's Board decision. What is "unwarranted" is to disregard the permissible inference of bias in the Appeal Board decision.

**D.** **The District Court's Failure To Recognize The Denial Of Due Process From The Improper Denial Of Cross-Examination At The Commandant's Board Hearing.**

The Complaint alleges that at the Commandant's Board hearing, following the testimony of Cadets "Rya," "Er," "Noa," and "Sha" that did not support Jane

Roe's accusations, Jane Roe then gave her unsworn account in narrative form of the three alleged incidents: Jenkins Hall, Mess Hall and Law Barracks Sally Port; but when Jane Roe was asked by John Doe's representative about "false memory," the Board President cut off the questioning. (JA31-32.)  Paragraph 96 of the Complaint states:

> Cross-examination has been recognized as the greatest legal engine ever invented for discovery of the truth, *Lilly v. Virginia*, 527 U.S. 116, 124 (1999), and has been ruled to be required for basic due process in campus disciplinary cases, *Donohue v. Baker*, 976 F. Supp. 136 (N.D.N.Y. 1997).  Yet, cross-examination here was cut off when it was done on behalf of John Doe.

(JA37.)  *See also California v. Green*, 399 U.S. 149, 158 (1970) ("cross-examination, the 'greatest legal engine ever invented for the discovery of truth.' "); *Smith v. State of Illinois*, 390 U.S. 129, 131 (1968) ("denial of cross-examination without waiver . . . would be constitutional error of the first magnitude").

The District Court acknowledges that cross-examination of Jane Roe was cut off when she was asked about "false memory," but asserts that universities have a legitimate interest in not subjecting Jane Roe to harassment and that the Fourth Circuit has not found a basis in law for importing cross-examination into the academic context, citing and relying upon *Doe 2 v. Fairfax County School Board*, 384 F.Supp.3d 598, 612 (D. Md. 2019), quoting  *Butler v. Rector & Bd. of Visitors*

[27]

*of Coll. of William & Mary*, 121 F. App'x 515, 520 (4th Cir. 2005). (JA65.) Neither

rationalization, however, justifies the pleaded cut off of cross-examination here.

### 1.    <u>The Cross Question Was Not Harassment</u>.

The question about "false memory" was not remotely harassment. The

question was posed in the circumstances of a hearing at which all but one non-party

witnesses had supported John Doe and the one non-party witness for Jane Roe had

not really supported Jane Roe. (JA31-32.) The question fairly challenged Jane

Roe's purported recollection that had numerous difficulties: the testimony of non-

parties did not support her but rather supported John Doe; John Doe's testimony

consistently denied her allegations; John Doe's character witnesses vouched for his

good conduct; facts as to the timing, John Doe's carrying of his rifle and Jane Roe's

changing of date to avoid video evidence all went against Jane Roe. It was important

to challenge Jane Roe's credibility. The Commandant's Board, after cutting off

cross-examination aimed at challenging Jane Roe's credibility, would rule against

John Doe based upon Jane Doe's credibility (JA32-33).

Cutting off cross-examination after one question is contrary to the long-

established precedent giving customary latitude given to the cross-examiner. In

*Alford v. United States*, 282 U.S. 687, 692 (1931), the U.S. Supreme Court stated:

> It is the essence of a fair trial that reasonable latitude be given the cross-
> examiner, even though he is unable to state to the court what fact a
> reasonable cross-examination might develop. Prejudice ensues from a
> denial of the opportunity to place the witness in his proper setting and

put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them.

In *Smith v. State of Illinois*, 390 U.S. 129, 132 (1968), the U.S. Supreme Court stated:

It is the essence of a fair trial that reasonable latitude be given the cross-examiner, even though he is unable to state to the court what facts a reasonable cross-examination might develop. Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them. . . . To say that prejudice can be established only by showing that the cross-examination, if pursued, would necessarily have brought out facts tending to discredit the testimony in chief, is to deny a substantial right and withdraw one of the safeguards essential to a fair trial.

## 2. Cross-Examination In Campus Tribunals.

The case relied upon by the District Court, *Butler v. Rector & Bd. of Visitors of Coll. of William & Mary*, pre-dates the case law that has developed as a result of concerns over the lack of due process in campus sexual misconduct tribunals since the issuance of the April 2011 Dear Colleague Letter. *See*, *e.g.*, *Doe v. Purdue*, 928 F.3d 652, 663 (7th Cir. 2019) (the due process need for a "hearing [that] is a real one, not a sham or pretense"); *Doe v. Baum*, 903 F.3d 575, 578 (6th Cir. 2018) ("if a public university has to choose between competing narratives to resolve a case, the university must give the accused student or his agent an opportunity to cross-examine the accuser and adverse witnesses in the presence of a neutral fact-finder"); *Doe v. University of Cincinnati*, 872 F.3d 393, 401 (6th Cir. 2017) (right to cross-examine in serious disciplinary cases); *Doe v. Alger*, 175 F.Supp.3d 646, 662 (W.D.

Va. 2016) (distinguishing *Butler v. Rector & Bd. of Visitors of Coll. of William & Mary*, due process denied to male plaintiff suspended as a result of university sexual misconduct finding).

Recognizing the harmful results of the April 2011 Dear Colleague Letter, then Secretary of Education Betsy DeVos observed, among other things, that "no student should be forced to sue their way to due process," and that "[o]ne person denied due process is one too many." "Transcript: Betsy DeVos's Remarks on Campus Sexual Assault," Washington Post, Sept. 7, 2017.  That speech announced that Title IX regulations would be proposed per the Administrative Procedure Act; indeed, Title IX regulations were announced in May 2020 for effective date in August 2020. "*Secretary DeVos Announces New Title IX Regulation,*" *https://www.youtube.com/watch?v=hTb3yfMNGuA;* U.S. Department of Education Press Release, "Secretary DeVos Takes Historic Action to Strengthen Title IX Protections for All Students," May 6, 2020.  Those regulations included the requirement for a live hearing that included cross-examination to be conducted directly and to permit questions aimed at credibility. 34 C.F.R. § 106.45(b)(6)(i).

### 3.    Motion To Dismiss Law.

The District Court, however, was of a different mind: that courts halt questioning for a myriad of reasons, citing *Vega* and rationalizing that the "decision to stop the questioning of Jane Roe because it *might have* deemed it irrelevant,

harassing or otherwise 'cannot be said to have stripped the disciplinary process of its constitutional meaning.' " (emphasis added) (JA65-66).    This speculative rationalization -- based on what "might have" justified halting cross-examination -- does not work on a motion to dismiss, as it is contrary to the motion to dismiss rule that "[w]hen considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and should view the complaint in a light most favorable to the plaintiff." *Ostrzenski v. Seigel*, 177 F.3d at 251; *Mylan Labs., Inc.*, 7 F.3d at 1134.  It is a far more reasonable inference to draw from the pleaded allegations that cross-examination was cut off abruptly in order to protect Jane Roe from impeachment. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir.  1999) ("draw all reasonable inferences from those facts in plaintiff's favor").

**E.    The District Court's Failure To Recognize The Denial Of Due Process From The Arbitrary And Capricious Decision That Was Rendered By The Commandant's Board And The Appeal Board.**

### 1.    *Vega* Satisfied.

As noted above, *Vega* recognized as one benchmark for due process that a decision imposing serious disciplinary action should be "based upon ample evidence such that the decision is not arbitrary or capricious."  2004 WL 3334816, at *6.

According to the Complaint, Jane Roe's testimony did not provide "ample evidence," and the Commandant's Board decision relying upon Jane Roe's testimony was arbitrary and capricious for the female Jane Roe contrary to the

overwhelming weight of the evidence. (JA33-34.) The testimony of Cadets "Rya," "Noa" and "Sha" contradicted Jane Roe, and even the testimony of Cadet "Er" mostly did not support Jane Roe. (JA31-32.) The testimony of John Doe fully supported his denial of the accusations and his denial of contact with Jane Roe at the Law Barracks Sally Port, that on the day in question, the time he was coming from a Marine lab and his hands would not have been free to grope Jane Roe as he was carrying his Kevlar and rifle. (JA32-33.) John Doe also had character witnesses who said he would not have engaged in the alleged behavior. (JA32-33.)

The Commandant's Board's credibility determination in favor of Jane Roe was made arbitrarily and capriciously, contrary to: (i) the change in Jane Roe's date of the alleged incident at the Law Barracks Sally Port from early October 2019 to September 12, 2019, that conveniently made unavailable video footage of the Law Barracks Sally Port; (ii) the difference between Jane Roe's complaint description of the incident (groping) to what the Commandant's Board supposedly found (rubbing up against); (iii) the non-acceptance of two of the three accusations made by Jane Roe; (iv) John Doe's consistent denial of all the accusations; (v) the witnesses for John Doe who denied that John Doe had engaged in the accused incidents and that they never saw John Doe engage in any sexual harassing or sexually violent behavior toward Jane Roe; and (vi) John Doe's character witnesses. (JA33-34.)

Also as discussed above, the Appeal Board's affirmance of the Commandant's Board was so clearly without merit as to permit an inference of bias.  (JA34-35.)

## 2.    <u>District Court Error</u>.

The District Court nonetheless insists that the timing of the alleged incident at Law Barracks Sally Port (John Doe's Marine lab lasted until 18:00 when the alleged incident at the Law Barracks Sally Port supposedly happened), the fact that John Doe was carrying his rifle and was not hands-free, and the fact that Jane Roe was allowed to change the date of the incident so there would not be video evidence do not pass the threshold of asserting the Commandant's Board was arbitrary and capricious, that John Doe is merely taking umbrage at the way the Commandant's Board received and weighed evidence.  (JA66-68.)  With these assertions, the District Court grievously errs.

The District Court recites the very facts that make Jane Roe's allegation about what happened at the Law Barracks Sally Port so improbable as to be practically impossible.  It is not simply a matter of taking justified umbrage at the way the Commandant's Board received and weighed evidence. It is a matter that the Commandant's Board failed to receive and weigh evidence rationally and strained to reach a conclusion that defied the overwhelming weight of the evidence, and when doing so, acted arbitrarily and capriciously in a denial of constitutional due process.

[33]

Arbitrary and capricious was originally defined in the Administrative Procedure Act and has been taken to mean an absence of a rational connection between the facts found and the choice made, a clear error of judgment, an action not based upon consideration of relevant factors or not in accordance with law or without observance of procedure required by law. *Natural Resources Defense Council, Inc. v. United States EPA*, 966 F.2d 1292, 1297 (9th Cir. 1992); *Mangum v. Hallembaek*, 910 F.3d 770, 774 (4th Cir. 2018); *Hickory Neighborhood Def. League v. Burnley*, 703 F.Supp. 1208, 1218 (W.D.N.C. 1988), *aff'd in part and vacated in part sub nom. on other grounds Hickory Neighborhood Def. League v. Skinner*, 893 F.2d 58 (4th Cir. 1990). With that understanding of the phrase, the Commandant's Board was most certainly arbitrary and capricious.

The case law cited by the District Court does not justify rationalizing John Doe's objection to the decision of the Commandant Board as arbitrary and capricious as seeking to relitigate the case. *Doe v. Maryland*, 2021 WL 1174707, at *26-27 (D. Md. Mar. 29, 2021), recognized the *Doe v. Baum* precedent supporting the right to cross-examination, but distinguished it on the ground that *Doe v. Baum* involved a public school and the Loyola school in *Doe v. Maryland* was private. Contrary to the District Court, *Doe v. Maryland* did not cite to *Doe v. Univ. of the S.*, 687 F.Supp.2d 744, 755 (E.D. Tenn. 2009), which in any event was not a due process case. *Shaw v. Bd. of Trs. of Frederick Cnty. Col.*, 549 F.2d 929, 932 (4th Cir. 1976),

[34]

noted that courts do not hesitate to set aside unconstitutional actions of school boards but observed "we will not second guess such bodies on matters within their discretion that do not rise to the level of constitutional deprivations." *See also Tigrett v. Rector & Visitors of the Univ. of Va.*, 290 F.3d 620, 629 (4th Cir. 2002) ("*in the absence of a constitutional or statutory deprivation*, courts should be loathe to interfere with the organization and operation of an institution of higher education") (emphasis added).   The point is when public schools do make arbitrary and capricious decisions in serious disciplinary cases that *Vega* recognized was a denial of constitutional due process, the courts do not owe deference to the schools but rather set aside the arbitrary and capricious decisions; plaintiffs in those cases are not relitigating but seeking to uphold due process.

**F.   The District Court's Reliance Upon What Procedures John Doe Did Receive As Overwhelming The Lack Of Impartiality And Neutrality, The Cutting Off Of Cross-Examination, And The Arbitrary And Capricious Decision-Making.**

The District Court noted the John Doe had the opportunity at the hearing to present a statement and testimony, to call witnesses and to have a representative. (JA66.)  To be sure, John Doe did have those formal procedures.  But those formal procedures did not obviate and cancel out the due process deficits in the lack of impartiality and neutrality, the cutting off of cross-examination, and the arbitrary and capricious decision-making. Having some due process does not make up for the serious deficits in due process that deprive the plaintiff of the due process of law.

[35]

G.    **The District Court's Confusion Of Affording Due Process And The Compliance With School Policies.**

The District Court, after erroneously failing to conduct a more searching due process inquiry appropriate for a sexual misconduct case and erroneously rationalizing away the lack of impartiality and neutrality, the unjustified cutting off of cross-examination and the arbitrary and capricious decision, faults John Doe for not citing school policy to bolster his case. (JA68.)  The District Court, however, confuses two separate matters: affording due process and compliance with school policies.  Due process may be denied even though it may not technically violate school policy, and violation of school policy does not necessarily mean there is a due process violation.

**III.**

**JOHN DOE HAS ALLEGED FACTS THAT ALLOW THE COURT TO DRAW THE REASONABLE INFERENCE THAT THE CITADEL DISCRIMINATED AGAINST JOHN DOE ON THE BASIS OF SEX**

As stated in the Summary of Argument and discussed in this section of the Argument, John Doe has alleged facts that more than raise a plausible inference that The Citadel discriminated against John Doe on the basis of sex.  This Court in *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 235 (4th Cir. 2021), adopted Judge Barrett's test, now the test in most Circuits, stated in *Doe v. Purdue*, 928 F.3d at 667-668, that a plaintiff must allege facts that, "if true, raise a plausible inference that the university discriminated against John [Doe] on the basis of sex."

[36]

Here, the District Court erred in not ruling that the Complaint alleged facts that raise a plausible inference that Defendant The Citadel discriminated against John Doe on the basis of sex. This is a case over alleged "sexual violence" (which was brief unwanted sexual contact); two of the three accusations were so unfounded that they had to be rejected; the third accusation was sustained despite the overwhelming evidence against it, including the timing of the alleged incident at Law Barracks Sally Port (John Doe's Marine lab lasted until 18:00 when the alleged incident at the Law Barracks Sally Port supposedly happened), the fact that John Doe was carrying his rifle and was not hands-free, and the fact that Jane Roe was allowed to change the date of the alleged incident so there would not be video evidence disproving it (the Board declaring the change in date to be irrelevant). The "believe the woman" procedural and adjudicative irregularities and decision-making contrary to the evidence detailed in the Complaint establish the gender bias causing the erroneous discipline. (JA6-8, JA30-35.) *Menaker v. Hofstra*, 935 F.3d 20, 34 (2d Cir. 2019); *Doe v. Columbia*, 836 F.3d 46, 57 (2d Cir. 2016); *Doe v. Univ. of Arkansas-Fayetteville*, 974 F.3d 858, 864-865 (8th Cir. 2020).

## A.    Judge (Now Justice) Barrett's *Doe v. Purdue* Test for Sex Discrimination.

The District Court began its Title IX discussion by noting the private right of action under Title IX, the undisputed fact of federal funding of The Citadel and the undisputed fact of John Doe's exclusion from The Citadel -- which meant that the

[37]

only issue is whether The Citadel discriminated against John Doe based on sex.  For that issue, the District Court recognized that this Court in *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d at 235, adopted Judge (now Justice) Barrett's test stated in *Doe v. Purdue*, 928 F.3d at 667-668, that a plaintiff must allege facts that, "if true, raise a plausible inference that the university discriminated against John [Doe] on the basis of sex."  (JA69-70.)

Judge (now Justice) Barrett's *Doe v. Purdue* test has been adopted in: *Doe v. University of Sciences*, 961 F.3d 203, 209 (3d Cir. 2020); *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 235 (4th Cir. 2021); *Doe v. Oberlin*, 963 F.3d 580, 588 (6th Cir. 2020); *Doe v. Univ. of Arkansas - Fayetteville*, 974 F.3d 858, 864 (8th Cir. 2020); *Schwake v. Arizona Bd. of Regents*, 967 F.3d 940, 947 (9th Cir. 2020); *Doe v. Univ. of Denver*, 1 F.4th 830, 838 (10th Cir. 2021) ("*Denver II*"); *Doe v. Samford Univ.*, 29 F.4th 675, 688 (11th Cir. 2022).

"Sex discrimination need not be the only plausible explanation or even the most plausible explanation for a Title IX claim to proceed. *See Doe v. Baum*, 903 F.3d 575, 586 (6th Cir. 2018)."  *Schwake v. Arizona Bd. of Regents*, 967 F.3d at 948.  And there is no heightened pleading standard, which is important because it is "difficult for a plaintiff to know the full extent of alleged discrimination in decision-making before discovery allows a plaintiff to unearth information controlled by the defendant."  *Schwake v. Arizona Bd. of Regents*, 967 F.3d at 949.

**B.**    **The Relevance of the April 2011 Dear Colleague Letter.**

The District Court then addressed the relevance of the April 2011 Dear Colleague Letter, accepting that the relevance of the 2011 Dear Colleague Letter as the "backdrop" to a plausible Title IX case that alleges other facts showing discrimination. *Doe v. Purdue*, 928 F.3d at 668-669, citing *Doe v. Baum*, 903 F.3d 575, 586 (6th Cir. 2018). (JA71.)

The District Court noted that Defendants had argued that the April 2011 Dear Colleague Letter had been rescinded, but the District Court correctly recognized that the Complaint alleged the The Citadel adhered to guidance that did not provide fundamental fairness to respondents and thus the April 2011 Dear Colleague Letter is still relevant.  (JA72.)

The April 2011 Dear Colleague Letter "explicitly focused on protection of women and effectively equated 'victims and 'complainants' in sexual misconduct proceedings as women who must receive preferential treatment," "imposed numerous mandates that inherently made it more difficult for males accused of sexual misconduct to defend themselves," and that it caused "universities to devise victim centered procedures for adjudicating sexual assault that are not neutral and impartial" with "the reality is that males are almost always the accused respondents and females are almost always the 'victim' complainants." (JA14, JA15, JA17-25.)

[39]

The Complaint also includes allegations concerning the revocation of the April 2011 Dear Colleague Letter (JA26-28), a revocation based on the need for due process that was lacking and based on a recognition that the April 2011 Dear Colleague Letter placed "improper pressure upon universities to adopt procedures that do not afford fundamental fairness" and are "overwhelmingly stacked against the accused." (JA27.) Defendants' continued adherence to victim-centered procedures -- seen in the due process discussion above of the lack of impartiality and neutrality, the cutting off of cross-examination, and the arbitrary and capricious decision-making -- is not in accord with the revised 2020 Title IX guidance, which has been ruled to be a contributing fact to a finding of Title IX discrimination, *Doe v. American University*, 2020 WL 5593909 at *9 (D.D.C. Sept. 18, 2020).

The District Court notes that John Doe acknowledges the April 2011 Dear Colleague Letter by itself is not enough (JA73) and that John Doe cites two respects that support a finding of sex discrimination: (i) a clearly irregular adjudicative process and (ii) a "believe the woman" bias (JA73-77). These two respects are the "something more" that the Complaint in this case pleads for gender bias causing the erroneous discipline. (JA6-8, JA30-35.) *See Doe v. University of Denver*, 1 F.4th 822 ("*Denver II*") (the difference in treatment of complaints -- complaints by males not investigated and rejected versus complaints by females investigated and sustained -- supports inference of gender bias).

[40]

**C.**    <u>The Inference Of Sex Discrimination From A "Clearly Irregular Adjudicative Process".</u>

The District Court (1) asserts, inaccurately, that John Doe based his argument concerning the inference of sex discrimination from a "clearly irregular adjudicative process" in *Doe v. Purdue* and, (2) incorrectly here, the substantial weight of the evidence argument has "pitfalls." (JA73-75.)

**1.**    <u>The District Court's Treatment of *Doe v. Purdue* and John Doe's Actual Argument on "Clearly Irregular Adjudicative Process".</u>

The District Court distinguishes *Doe v. Purdue* with this case by contrasting the hearing in this case where the female accuser testified in person with the female accuser in *Doe v. Purdue* being credited by the decision-making Dean and Advisory Committee even though the female accuser never appeared before the decision-maker Dean and Advisory Committee and never even talked with them. (JA73.)

John Doe did not, however, base his argument concerning the inference of sex discrimination from a clearly irregular adjudicative process on *Doe v. Purdue*. While *Doe v. Purdue* was discussed in this connection before the District Court, as the conduct of the decision-making Dean and Advisory Committee provided an example of a clearly irregular adjudicative process, John Doe based his argument concerning the inference of sex discrimination from a clearly irregular adjudicative process on *Menaker v. Hofstra*, 935 F.3d 20, *Doe v. Columbia*, 831 F.3d 46, and *Doe v. Univ. of Arkansas-Fayetteville*, 974 F.3d 858. (JA47.)

[41]

John Doe's Memorandum of Law to the District Court on the clearly irregular adjudicative process first distinguished *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, as off point because it involved a male who was disciplined for a physical altercation regardless of the fact that two females were involved. (JA46.) Here, there was no issue of causal connection between the clearly irregular adjudicative process and the challenged discipline of John Doe.

John Doe's Memorandum of Law to the District Court then stated that "*Menaker v. Hofstra*, *Doe v. Columbia* and *Doe v. Univ. of Arkansas-Fayetteville* rule that the circumstances of adjudicative irregularities, which include decision-making contrary to the substantial weight of the evidence, support an inference of gender bias." (JA47.) John Doe's Memorandum of Law to the District Court proceeded, consistent with the Complaint (JA42), to quote *Menaker v. Hofstra*:

> [W]e need not define precisely what sort of irregularities meet the standard of "clearly irregular investigative or adjudicative process." But we note that *Doe v. Columbia* offers some guidance on this issue. For instance, "[w]hen the evidence substantially favors one party's version of a disputed matter, but an evaluator forms a conclusion in favor of the other side (without an apparent reason based in the evidence), it is plausible to infer (although by no means necessarily correct) that the evaluator has been influenced by bias." Similarly, where decision-makers choose "to accept an unsupported accusatory version over [that of the accused], and declined even to explore the testimony of [the accused's] witnesses," this too "gives plausible support to the proposition that they were motivated by bias."

935 F.3d at 34, footnotes omitted. (JA47; *see also* JA42.)

[42]

In this case, to echo *Menaker v. Hofstra*, 935 F.3d at 34, and *Doe v. Columbia*, 831 F.3d at 58, the evidence substantially favored John Doe's version of the case, but the Commandant Board formed a conclusion in favor of the other side Jane Roe without an apparent reason based in the evidence, and the Commandant Board accepted Jane Roe's accusatory version against almost all the other evidence. *Doe v. Univ. of Arkansas-Fayetteville*, 974 F.3d at 864-865, one of the circumstances that permitted the inference of sex discrimination was that the substantial weight of the evidence was against the decision-making panel:

> The panel's finding that Roe became incapacitated at Doe's residence, however, is against the substantial weight of the evidence set forth in the complaint. Farrar, the Title IX coordinator, allegedly found that Roe's consumption of alcohol "had not substantially impacted her decision-making capacity, awareness of consequences, and ability to make fully informed judgments." He noted her "clear ability to communicate with John Doe via text message and coordinate her efforts to leave the party so that she arrived at his residence shortly after he arrived." . . . . Based on the present record, therefore, the panel's finding about Roe's incapacitation is unexplained and against the substantial weight of the evidence as detailed in the complaint.

Likewise, in this case, the substantial weight of the evidence was against Jane Roe's accusation concerning the alleged incident at Law Barracks Sally Port. *See also Doe v. Oberlin*, 963 F.3d at 588 ("when the degree of doubt passes from 'articulable' to grave, the merits of the decision itself, as a matter of common sense, can support an inference of sex bias. *Cf. Doe v. Purdue Univ.*, 928 F.3d 652, 669 (7th Cir. 2019).")

The District Court never deals with *Menaker v. Hofstra*, *Doe v. Columbia* and *Doe v. Univ. of Arkansas-Fayetteville* on the subject of the inference of sex discrimination from a clearly irregular adjudicative process. Instead, the District Court asserts, erroneously, that John Doe argues, with a heavy hand, that *Doe v. Purdue* means all Complaints proceed to discovery. (JA74.) John Doe did not so argue with or without a heavy hand.

**2.      The District Court's Stated "Pitfalls" Of The Substantial Weight Of The Evidence Argument Are Not "Pitfalls" In This Case.**

The District Court also asserts that the substantial weight of the evidence argument has the "pitfalls" of (i) not being motivated by gender bias and (ii) the existence of the Appeal Board review. (JA74-75.) Neither supposed "pitfall" function here to undermine the inference of sex discrimination from a clearly irregular adjudicative process.

*First*, as discussed below (pp. 46-52), John Doe's Title IX case is that the Commandant Board was motivated by the "Believe The Woman" gender bias. The District Court's reference to *Doe v. Columbia Coll. Chi.*, 933 F.3d 849, 856 (7th Cir. 2019), is to an inapposite case where "Doe does not allege the particularized 'something more' [than the backdrop of the April 2011 Dear Colleague Letter] that is required to survive a motion to dismiss." The *Columbia Coll. Chi.* plaintiff had the opportunity to submit evidence including affidavits by witnesses and to submit questions to be asked Roe on cross-examination, 933 F.3d at 856; here, as discussed

above, the Commandant's Board was biased and cut off cross-examination of Jane Roe.  The *Columbia Coll. Chi.* plaintiff did not identify what constituted the gender bias that caused the hearing panel to rule contrary to the weight of the evidence and could not say a female would have been treated differently with respect to restriction to access to documents, 933 F.3d at 856; here, as discussed below John Doe identifies the "Believe The Woman" gender bias as distorting the decision on the merits, and that gender bias by definition treats females differently.  Further, here, as in *Doe v. Oberlin*, 963 F.3d at 588, the way the merits of the case were treated supported an inference of sex bias.

*Second*, as discussed above (pp. 9-10, 25-26), the Appeal Board decision clearly lacked merit and cannot rightly be used to cure a biased Commandant's Board decision, and further, there is a permissible inference of bias in that Appeal Board decision. The District Court's reference to the 11th Circuit decision in *Doe v. Samford Univ.*, 29 F.4th 675, is to another inapposite case where what was said to be an institutionalized procedural favoritism of females coupled with procedural missteps was ruled not to support an inference of sex bias.  The plaintiff in *Samford Univ.* did not plead facts in support of many of his claim of procedural irregularities, and those claims of procedural irregularities that were supported by facts were ruled not to evince gender bias. 29 F.4th at 687. The plaintiff in *Samford Univ.* complained about the Appellate Board not accepting new evidence, but the plaintiff in *Samford*

[45]

*Univ.* failed to plead facts that showed the exclusion was improper and not just done pursuant to general University policy.  29 F.4th at 688.  Here, as discussed above (pp. 25-26), there were multiple problems with the Appeal Board decision, and the new evidence that was disregarded was submitted to deal with Jane Roe's change of date of the alleged Law Barracks Sally Port incident and was critically dispositive that the alleged incident at the Law Barracks Sally Port did not happen. The plaintiff in *Samford Univ.* complained about other procedural irregularities, but they were explained by obvious alternative explanations.  29 F.4th at 688-689.

### D. <u>Sex Discrimination Is Shown By "Believe The Woman" Gender Bias.</u>

The Complaint pleads that "believe the woman gender bias" explains the procedural and adjudicative irregularities and the decision-making contrary to the evidence.  (JA8, JA32-33, JA41, JA42.)  The District Court acknowledges that John Doe cites the "believe the woman" bias to support an inference of sex discrimination, but asserts different treatment of males and females does not evince gender bias because John Doe was the alleged sexual assailant and Jane Roe was the alleged victim, citing *Doe v. Coastal Carolina*, 522 F.Supp.3d 173, 181 (D.S.C. 2021). (JA76.)

[46]

1. **The District Court's Reading of *Doe v. Coastal Carolina* Would Erroneously Justify Applying Title IX To Favor Females Contrary To Title IX's Text.**

The District Court unjustifiably generalizes *Doe v. Coastal Carolina* way too far with that argument, quoting a passage divorced from the specific facts and actual rulings of the case. *Doe v. Coastal Carolina* was not on a motion to dismiss but on summary judgment, and there was a factual record in which the respondent was the assailant, the complainant was the "victim" and the complainant was treated more favorably. That relatively limited point from a factual record on summary judgment in *Doe v. Coastal Carolina* does not contradict the separate point here, considering a Complaint on a motion to dismiss, that (JA42) "believe the woman gender bias" (JA33-34, JA41) combined with a "pro-victim bias" and with the fact 99% of university complainants are female and 99% of respondents are male (JA17) produces an otherwise unjustified systematic presumption of male guilt that more than sufficiently pleads gender bias (JA41-42).

The District Court states that *Doe v. Coastal Carolina* cannot simply be written off as a summary judgment decision (JA76), but it is not a matter of writing off *Coastal Carolina* but rather of recognizing that reading *Coastal Carolina* as a general proposition, as the District Court has, is a justification for favoritism of females contrary to the text of Title IX at 20 U.S.C. § 1681(a) that requires no

discrimination on the basis of sex, not female favoritism.  The text of 20 U.S.C. §
1681(a) reads:

> No person in the United States shall, on the basis of sex, be excluded
> from participation in, be denied the benefits of, or be subjected to
> discrimination under any education program or activity receiving
> Federal financial assistance . . .

(JA40.)  *See* A. Scalia, *Reading Law: The Interpretation of Legal Texts* p. 56 (West
Pub. 2012): "When deciding an issue governed by the text of a legal instrument, the
careful lawyer or judge trusts neither memory or paraphrase but examines the very
words of the instrument. As Justinian's *Digest* put it: *A verbis legis non est
recedendum* ('Do not depart from the words of the law')." (Footnote omitted.)

The Complaint pleads that sex discrimination is shown by the "believe the
woman" gender bias -- that the reality in the context of campus sexual misconduct
proceedings is that the "victim" is the "woman" who is to be "believe[d]."  (JA33-
34, JA41.)  The Complaint pleads, citing a United Educators study, that in these
campus sexual proceedings, 99% of university complainants are female and 99% of
respondents are male, and the District Court accepts that pleading. (JA17, JA77.)
The Complaint pleads that "[t]he 'believe the woman' bias evidenced in the
Commandant's Board proceeding and the disposition of John Doe's appeal
demonstrated that John Doe was discriminated against on the basis of sex." (JA41.)
The facts alleged in the Complaint reflect a victim-centered process in which the

male student is prosecuted under a presumption of guilt resulting in The Citadel's crediting of a female's false accusation of sexual violence and presuming the accusations to be true, instead of applying a preponderance of the evidence in a reasoned consideration with no special treatment given to the fact that the complainant is a female and the respondent is a male.  (JA6-8, JA19-20, JA30-35, JA41-42.)

If the system is victim-centered in the sense that complainant are "victims' who are treated more favorably, the system is not neutral and impartial; with females as the "victim" complainants and males the "accused" respondents, a victim-centered process with a "believe the woman" bias intentionally advantages females contrary to the text of Title IX decreeing non-discrimination.

### 2.    The Relevance Of Statistical Evidence.

The District Court asserts, citing *Doe v. Samford Univ.*, 29 F.4th at 692, that statistics "alone" do not alter the plausibility of Title IX sex discrimination case (JA76-77), and the court in *Doe v. Coastal Carolina* said the same thing in noting the case law that statistical evidence "alone" does not establish a case of intentional discrimination. 522 F.Supp.3d at 180. Title IX is an intentional discrimination statute. *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994). Statistics showing which sex are complainants and statistics showing which sex are respondents do not establish the intent element of a Title IX case.  That was the situation in *Doe v.*

*Trustees of Boston College*, 892 F.3d 67, 92 (1st Cir. 2019) (only males were sexual assault respondents).

But the *Doe v. Coastal Carolina* court also went on to state "[h]owever, they [the statistics] may provide context when combined with circumstantial evidence of bias in a particular case." 522 F.Supp.3d at 180. An example is *Doe v. Univ. of Denver*, 1 F.4th at 831-836 ("*Denver II*"), where the Tenth Circuit ruled that the statistical evidence plus procedural deficiencies, such as female complaints being acted upon and sustained while male complaints being not investigated and rejected, established gender bias.

John Doe does not rely upon statistics alone. What the statistics do, among other things, is disabuse the theoretical notion that a pro-complainant bias in a victim-centered process, as was effectively required by the April 2011 Dear Colleague Letter, can be dismissed as gender neutral operationally. In this context of a victim-centered process, a "believe the woman" bias, also promoted by the April 2011 Dear Colleague Letter (JA20-21), is evidence of gender bias.

Here, the "believe the woman" bias explains why the Commandant's Board, without an apparent reason based in the evidence that substantially favored John Doe's version, accepted Jane Roe's accusatory version -- which is a clearly irregular adjudicative process evidencing gender bias. *See Menaker v. Hofstra*, 935 F.3d at

34; *Doe v. Columbia*, 831 F.3d at 58; *Doe v. Univ. of Arkansas-Fayetteville*, 974 F.3d at 864-865; *Doe v. Oberlin*, 963 F.3d at 588; *Doe v. Purdue*, 928 F.3d at 669.

While some universities deny they are responsible for the gender make up of students who chose to report sexual misconduct, *e.g.*, *Doe v. Trustees of Boston College*, 892 F.3d at 92, universities are nonetheless responsible as a matter of law for ensuring that the operation of their sexual misconduct disciplinary procedures comply with Title IX. One reason for finding gender bias in *Doe v. Miami*, 882 F.3d 579, 594 (6th Cir. 2018), to hold the university liable under Title IX was that reduced protections for the accused has meant that male respondents are sanctioned. The September 22, 2017 Dear Colleague Letter and accompanying Q&A and the current Title IX regulations, *inter alia*, prohibit universities from relying upon fixed rules or assumptions that favor complainants over respondents, require notice of specific, detailed allegations be given to respondents at the time the investigation is opened and require decision-makers to make findings of fact and conclusions of law to support findings of responsibility. (JA26-30; 34 C.F.R. § 106.45.)

The reality of female complainants/male respondents is something to have been expected by universities when implementing the April 2011 Dear Colleague Letter and for which universities must take account in administering and complying with Title IX. The Citadel, like other universities, responded to the April 2011 Dear Colleague Letter by providing procedures for the discipline of sexual misconduct on

campus in order to deal with a greatly exaggerated problem of sexual assault against women on campus; The Citadel, knowing the gender make up of complainants and respondents, wrongly established a "victim-centered" process and did not attend to what is required for fairness to male respondents. (JA12-21, JA41-42.) University administrators' employment of processes that unfairly favor a female complainant over a male respondent provides the basis for an inference that the administrators were in fact so motivated by gender bias. *Doe v. Columbia*, 831 F.3d at 57-58.

Contrary to the District Court (JA77), the notion that well pleaded and fact supported allegations of "believe the woman gender bias" are insufficient to support a case of sex discrimination on a motion to dismiss is an illogical denial of the well pleaded gender bias here and cannot be rationalized away given the rules, discussed above (p. 15), governing motions to dismiss.

## **CONCLUSION**

For the reasons stated above, this Court should (i) reverse the District Court's Opinion and Order granting Defendants' motion to dismiss and dismissing the case, (ii) remand the case to the District Court for further proceedings, and (iii) grant such other and further relief as this Court deems just and proper.

[52]

## <u>REQUEST FOR ORAL ARGUMENT</u>

Counsel for John Doe respectfully requests oral argument for this appeal.

**Dated:**       **October 11, 2022**       <u>/s/ Philip A. Byler</u>
Philip A. Byler, Esq. (Counsel of Record)
11 Broadview Drive
Huntington, New York 11743
<u>philb@optonline.net</u>

*Attorney for Plaintiff-Appellant John Doe*

[53]

## <u>CERTIFICATE OF COMPLIANCE</u>

1. This document complies with the type-volume limits because, excluding the

   parts of the document exempted by Fed. R. App. P. 32(f) (cover page, table

   of contents, table of citations, signature block, certificates of counsel):

   This document contains <u>12,990</u> words.

2. This document complies with the typeface requirements because:

   This document has been prepared in a proportional spaced typeface
   using <u>Microsoft Word</u> in <u>14-point Times New Roman</u>.

**Dated:**      **October 11, 2022**      <u>/s/ Philip A. Byler</u>
                                          Philip A. Byler, Esq. (Counsel of Record)
                                          11 Broadview Drive
                                          Huntington, New York 11743
                                          <u>philb@optonline.net</u>

                                          *Attorney for Plaintiff-Appellant John Doe*